IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANA J. T., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-CV-396-MTS |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Diana J. T. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc.*

*Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On August 28, 2018, Plaintiff filed an application for Title II disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under the SSA. (R. 10, 190). She alleged an inability to work beginning on September 5, 2018[1], due to limitations resulting from rheumatoid arthritis ("RA"), depression, and anxiety. (R. 213). Plaintiff was thirty-seven years old at the time of the ALJ's decision. (R. 1073, 1091). She has at least a high school education and past relevant work as a women's apparel and accessories salesperson. (R. 1071).

Plaintiff's application was denied both initially and upon reconsideration. (R. 79–112). On June 22, 2020, ALJ Laura Roberts issued a decision denying benefits and finding Plaintiff not disabled. (R. 7–32). Plaintiff sought review by the Appeals Council, which was denied on

---

[1] The Court notes Plaintiff amended her alleged onset date from November 1, 2016, to September 5, 2018. This was done February 26, 2020. (R. 213, 1087).

September 30, 2020. (R. 1–6). Plaintiff then filed suit and the case was ultimately remanded to the Social Security Administration for further proceedings on December 3, 2021. (R. 1149–55).

At Plaintiff's request, ALJ Luke Liter conducted a second administrative hearing on May 17, 2022. (R. 1050, 1083). The hearing was held by teleconference pursuant to COVID-19 procedures. *Id.* ALJ Liter issued a decision on June 22, 2022, denying benefits and finding Plaintiff not disabled. (R. 1047–82). The Appeals Council did not assume jurisdiction and Plaintiff did not file exceptions disagreeing with the hearing decision. *See* 20 C.F.R. § 404.984. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. *Id.*

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since November 1, 2016. (R. 1053). At step two, he found Plaintiff suffered from the severe impairments of RA, fibromyalgia, generalized anxiety disorder, and depressive disorder. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 1054). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a)" with the following additional limitations:

> The claimant is able to lift or carry, push or pull ten pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of two hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes or scaffolds. The claimant should avoid crouching and crawling. The claimant can occasionally balance, kneel, and stoop. Environmentally, the claimant should avoid exposure to extreme heat, extreme cold, or extreme humidity. Job duties should not include exposure to unprotected heights. The claimant can understand, remember, and carry out simple tasks and detailed tasks that involve objects or data, but not people. Complex tasks should not be part of the job duties. The claimant could

> tolerate superficial, meaning brief and cursory, contact with coworkers and supervisors. She should not do job tasks that involve tandem work or teamwork. Public contact should not be required for successful completion of the job duties. The claimant could adapt to a work environment and changes in work environment. The claimant can frequently use the bilateral hands for tasks such as handling and fingering.

(R. 1057–58).

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as a women's apparel and accessories salesperson. (R. 1071). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of document preparer and tube operator, both of which he found existed in significant numbers in the national economy. (R. 1072–73). As a result, the ALJ found Plaintiff had not been under a disability from November 1, 2016, through the date of the decision. *Id.*

### Errors Alleged for Review

Plaintiff makes three arguments in her challenge to the Commissioner's denial of benefits on appeal. (Docket No. 12 at 6). First, Plaintiff argues the ALJ failed to properly consider Plaintiff's subjective allegations. *Id.* at 6–9. Second, Plaintiff asserts the ALJ failed to properly consider the medical opinions of Zubair Ashraf, M.D. *Id.* at 9–11. Third, Plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence. *Id.* at 11–12. In response, the Commissioner asserts the ALJ properly evaluated Plaintiff's subjective complaints and Dr. Ashraf's opinions. (Docket No. 23 at 4–15). Further, the Commissioner argues the ALJ's decision is supported by substantial evidence. *Id.*

### The ALJ's Evaluation of Plaintiff's Symptoms

When evaluating a claimant's symptoms, the ALJ uses a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ]

5

>evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7–*8.

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence he relies on in evaluating the [consistency of the claimant's subjective complaints],' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Plaintiff asserts the ALJ erred in his consideration of Plaintiff's allegations in three ways. (Docket No. 12 at 7). First, Plaintiff alleges the ALJ incorrectly concluded Plaintiff's allegations regarding the use of her hands and fingers were inconsistent with the evidence of record. *Id.* The ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of . . . her

symptoms [to be] inconsistent because although she reported her fingers curl up and she is unable to move them or write due to pain, the examination record does not document this level of limitation." (R. 1065). According to Plaintiff, her statements regarding her manipulative limitations, specifically her fingers curling, were not inconsistent with the evidence as they were made after the relevant period. *Id.* (citing R. 1104). During the administrative hearing held in May of 2022, the ALJ stated, "let's talk about your hands prior to December 2020. So after the last hearing through the end of 2020, tell us what was going on with the hands at that time." (R. 1104). The 2020 hearing which the ALJ referred to was held on February 26, 2020. (R. 10). Thus, the ALJ questioned Plaintiff about her hands during the period between February of 2020 and December of 2020. The relevant period of September 5, 2018, through December 31, 2020, encompasses the period discussed during the administrative hearing. (*See* R. 1053). Therefore, the Court finds Plaintiff's first argument to be unavailing.

Second, Plaintiff argues the ALJ failed to provide an explanation for rejecting Plaintiff's allegations regarding her issues with sitting, despite appearing to accept Plaintiff's issues with standing and walking. (Docket No. 12 at 7). The ALJ began his RFC assessment by discussing Plaintiff's testimony and subjective complaints that "she can now sit for 15 minutes at a time . . . [and] can stand for 5 minutes at a time . . . ." (R. 1059). He noted multiple instances in the record where Plaintiff's range of motion, posture, gait, coordination, ability to ambulate, and muscle strength were all documented as normal. (R. 1060–62). Additionally, the ALJ discussed the opinions of the state agency consultative physicians that Plaintiff could sit for approximately six hours of an eight-hour workday. (R. 1066). Ultimately, the ALJ found their opinions to be unpersuasive, as they "did not personally examine [Plaintiff] or request that diagnostic testing be performed" and the evidence of record was "more consistent with a sedentary exertion level." *Id.*

7

The ALJ also found the opinions of Dr. Ashraf and Nurse Practitioner Lori Franklin, both of whom concluded Plaintiff could sit for less than two hours in an eight-hour workday, to be unpersuasive. (R. 1066–67). The ALJ's evaluation of Plaintiff's complaints regarding her ability to sit is supported by substantial evidence and included a discussion referencing specific evidence which the ALJ relied on in evaluating Plaintiff's subjective complaints. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (stating that substantial evidence "requires more than a scintilla, but less than a preponderance"). Thus, the Court is likewise unpersuaded by Plaintiff's second argument.

Third, Plaintiff contends the ALJ did not properly address her allegations of increased difficulty during RA flares. (Docket No. 12 at 7–9) (citing *Borgsmiller v. Astrue*, 499 F. App'x 812 (10th Cir. 2012); *Hardman v. Barnhart*, 362 F.3d 676 (10th Cir. 2004)). The *Borgsmiller* court found the ALJ's credibility determination was not supported by substantial evidence because "the only justifications given by the ALJ to discount [the plaintiff's] complaints were the decreasing frequency of her flares and an alleged ability to perform daily activities." 499 F. App'x at 818. Similarly, the *Hardman* court concluded:

> [T]he ALJ did not properly assess claimant's credibility because he failed to give 'specific reasons' for his determination, failed to closely and affirmatively link his credibility conclusions to the evidence, and failed to discuss the significantly probative evidence supporting claimant's allegations upon which he chose not to rely. Further, virtually all of the reasons given by the ALJ for rejecting claimant's testimony are not supported by substantial evidence.

362 F.3d at 681.

Here, the ALJ noted Plaintiff's subjective complaints of pain, including that "she was in bed 95% of the time" on days she experienced an RA flare, she received weekly biologic injections in addition to taking daily medications for pain, and she also experienced pain from fibromyalgia. (R. 1059). He also noted, however, that "[i]n spite of the complaints of rheumatoid arthritis flares, [Plaintiff] had not been to urgent care for three months and did not take any additional medications

8

for her flares. Moreover, she reported she had last seen a rheumatologist in October 2017, but did not like the care." (R. 1060). Additionally, Plaintiff reported pain that was a five out of ten when taking Prednisone in September of 2018 and that Enbrel also seemed to help with her pain. (R. 1060, 1062). Finally, the ALJ noted Plaintiff's ability to do activities of daily living, such as enrolling her daughter in school and being "able to budget, pay bills, and manage expenses on her own." (R. 1071).

      Here, the ALJ's credibility analysis, which includes discussion of Plaintiff's complaints of RA flares, is more extensive than those done in *Borgsmiller* and *Hardman*. Not only did the ALJ acknowledge Plaintiff's reports of RA flares and her reduced capacity, but he also provided his reasoning as to why he did not find Plaintiff's subjective complaints credible, citing directly to evidence in the record. In addition to the evidence mentioned above, the ALJ also took note of records which indicated Plaintiff routinely had a normal gait, normal muscle strength, and ambulated without difficulty. (R. 1060–62, 1067–68). "Objective medical evidence such as reduced joint motion, muscle spasm, sensory deficit or motor disruption 'is a useful indicator to assist [an adjudicator] in making reasonable conclusions about the intensity and persistence of [an individual's] symptoms and the effect those symptoms, such as pain, may have on [an individual's] ability to work.'" *Scott v. Berryhill*, 271 F. Supp. 3d 1235, 1246 (N.D. Okla. 2017) (quoting 20 C.F.R. § 416.929); *see Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *6 (10th Cir. Oct. 28, 2022) ("[r]ange of motion, strength, and ability to ambulate are relevant to [the] inquiry" of whether the complainant's pain is "so severe . . . as to preclude any substantial gainful employment"). As such, the Court is unpersuaded by Plaintiff's third argument and concludes the ALJ properly considered Plaintiff's allegations.

**The ALJ's Evaluation of the Medical Opinion Evidence**

For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Thus, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c, 416.920c(a). Instead, the ALJ must articulate how persuasive he finds each medical source's opinion by considering certain factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). These factors include: (i) supportability; (ii) consistency; (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) specialization; and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[2]

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(1), 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

---

[2] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(2), 416.920c(c)(2).

Plaintiff appears to argue that the ALJ's evaluation of Dr. Ashraf's medical opinion was insufficient, as he did not provide an explanation as to why Dr. Ashraf's opinions "did not apply" to the ALJ's findings regarding Plaintiff's ability to manipulate objects. (Docket No. 12 at 10). Plaintiff also contends that the ALJ erred by not "cit[ing] to any evidence indicating that pain, tenderness, and fatigue did not also limit the plaintiff's ability to sit and manipulate as indicated by Dr. Ashraf." (Docket No. 12 at 10).

On February 7, 2020, Dr. Ashraf completed a form labeled "Medical Source Opinion of Residual Functional Capacity" in which he found that Plaintiff could sit, stand, and walk for less than two hours in an eight-hour workday. (R. 821). Dr. Ashraf also found the same two-hour limitation for Plaintiff's ability to use her arms for reaching, pushing, and pulling and her hands for grasping, handling, fingering, and feeling. *Id.* The ALJ found Dr. Ashraf's opinion to be only partially persuasive because it was not supported by Dr. Ashraf's own treatment notes. (R. 1066). In making this conclusion, the ALJ referenced examination notes from October 22, 2019, and February 10, 2020, both of which indicated Plaintiff had full range of motion in her hands. (R. 1067) (citing R. 813, 870). The ALJ also discussed Dr. Ashraf's records from January 14, 2021, which noted Plaintiff's gate and all her extremities as normal. *Id.* (citing R. 1303). Thus, the ALJ was unpersuaded by Dr. Ashraf's opinion as to Plaintiff's ability to use her arms and hands. (R. 1067).

However, the ALJ determined Dr. Ashraf's opinion as to Plaintiff's ability to stand and walk was persuasive, as it is "generally supported by findings of diffuse pain and tenderness and her diagnosis of rheumatoid arthritis [and] fibromyalgia[.]" (R. 1067). The ALJ then reiterated

11

that he did not find the entirety of Dr. Ashraf's opinion persuasive, as his treatment notes "d[id] not document loss of range of motion in [Plaintiff's] hands and fingers." *Id.*

According to Plaintiff, "[c]iting no loss of ROM [as the ALJ's reason for discounting Dr. Ashraf's opinion as to Plaintiff's manipulative limitations] is insufficient because Dr. Ashraf did not find loss of ROM anywhere" and "did not cite loss of ROM as a basis for his opinion." (Docket No. 12 at 10). Importantly, the ALJ found portions of Dr. Ashraf's opinion unpersuasive specifically because there was little to no support for the conclusions drawn by Dr. Ashraf. Conversely, the portions of Dr. Ashraf's opinion that the ALJ did find persuasive were supported by other evidence in the record and the ALJ limited Plaintiff to sedentary work with additional limitations accordingly. (R. 1057–58). Therefore, Plaintiff's assertion that the ALJ failed to provide sufficient explanation for his analysis of Dr. Ashraf's opinion is inaccurate and unavailing. *See Nielsen*, 2022 WL 15570650, at *5 (upholding the district court's finding that the ALJ did not err in rejecting a medical opinion on the basis that the medical professional "provided no support for her RFC opinions other than [the plaintiff's] subjective statements, she conducted no tests of [the plaintiff's] functional abilities, and her treatment notes contain no findings regarding such abilities"). Further, the ALJ is not required "to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). Therefore, the Court finds Plaintiff's argument that the ALJ failed to properly consider the medical opinions of Zubair Ashraf, M.D. to be unavailing.

### The ALJ's RFC Assessment

Lastly, relying on *Borgsmiller*, Plaintiff argues the ALJ erred when he "did not make a finding regarding the plaintiff's rheumatoid arthritis flares one way or the other." (Docket No. 12 at 11) (referencing 499 F. App'x 812). "Because [a claimant's complaints of disabling pain] are

12

subjective, a claimant's statements regarding her pain 'can be evaluated only on the basis of credibility.'" *Borgsmiller*, 499 F. App'x at 817. As discussed above, the ALJ found Plaintiff's complaints of RA flares to be inconsistent with the medical evidence of record and therefore not credible.

Moreover, the ALJ's analysis here is distinguishable from the analysis conducted by the ALJ in *Borgsmiller*. The *Borgsmiller* ALJ incorrectly relied on two pieces of evidence: 1) evidence allegedly showing the decreasing frequency of the claimant's pain flares; and 2) the claimant's alleged ability to perform some activities of daily living. 499 F. App'x 812. The Tenth Circuit concluded the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not assess the claimant's pain frequency during the relevant period and the fact the claimant was able to perform minimal activities of daily living during non-flare periods did not constitute substantial evidence that the claimant did not suffer disabling pain. *Id.* at 818–20. Further, the *Borgsmiller* court found that, because the ALJ gave "great weight" to a medical opinion stating the claimant was unable to work during her flares, the ALJ should have included further limitations in the RFC. *Id.* at 820.

Here, as previously discussed in detail above, the ALJ properly assessed Plaintiff's credibility in addition to thoroughly discussing the relevant medical evidence. (R. 1058–71). The ALJ found the state agency consultants' and Nurse Practitioner Franklin's assessments to be unpersuasive and found Dr. Ashraf's assessment to be only somewhat persuasive. *Id.* Such conclusions differ significantly from the *Borgsmiller* ALJ's assignment of "great weight" given to the relevant medical opinion in that case. Additionally, the ALJ here relied on more evidence than that relied upon in *Borgsmiller*—evidence which has not been shown to be assessed incorrectly. (R. 1058–71). As such, the Court is not persuaded by Plaintiff's argument that the ALJ's RFC

assessment is not supported by substantial evidence.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 7th day of November, 2023.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT